Mark J. Giunta (#015079)
Liz Nguyen (#030282)
Law Office of Mark J. Giunta
531 East Thomas Road, Suite 200
Phoenix, Arizona 85012
Phone (602) 307-0837
Fax (602) 307-0838
Email markgiunta@giuntalaw.com
Email liz@giuntalaw.com

*Attorneys for Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>RDX TECHNOLOGIES CORPORATION,<br><br>Debtor. | Chapter 11 Proceeding<br><br>Case No. 2:17-bk-14387-PS<br><br>**MOTION TO APPROVE SERVICES AND LICENSING AGREEMENT PURSUANT TO 11 U.S.C. § 363** |

Debtor and debtor-in-possession RDX Technologies Corporation ("Debtor"), by and through undersigned counsel, hereby requests that, pursuant to 11 U.S.C. § 363, the Court enter an Order to approve the Debtor's Services and Exclusive License Agreement ("Agreement") with Ridgeline Canada Inc. ("RCI"). A copy of the Agreement is attached hereto as **Exhibit 1**. This Motion is supported by the accompanying Memorandum of Points and Authorities and incorporated herein by this reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      BACKGROUND**

The Debtor filed its Chapter 11 bankruptcy petition on December 5, 2017.

The Debtor had operated an environmental service business in Alberta since 2000 and the past from approximately 2009 to 2014 operated a waste water treatment business for customers in the oil fracking industry. The Debtor, a Canadian company, directly provided the waste water treatment service to customers located in Canada, while a wholly owned United

States subsidiary of the Debtor, Ridgeline Energy Services (USA), Inc. ("Ridgeline USA"), provided the same waste water service to customers located in the United States. Essentially the Debtor provided the marketing of the waste water treatment service in Canada; and Ridgeline USA marketed the same services in the United States. Both the Debtor and Ridgeline USA used a proprietary process and technology, i.e., trade secrets (hereinafter "Proprietary Technology"), in the delivery of their waste water treatment services. The Proprietary Technology was and is held by a wholly owned subsidiary of Ridgeline USA, Ridgeline Eau Claire, Inc. (Alberta) ("Eau Claire") which gave the Debtor and Ridgeline USA permission to use the same.

In addition to directly providing waste water treatment services, the Debtor occasionally licensed the Proprietary Technology to users located in Canada rather than undertake the user's waste water treatment directly.

On or about May 2013, the Debtor entered into an agreement to purchase a plant (the "Plant") to process waste products into renewable fuel that would qualify under the Energy Policy Act. The Plant turned out to be a fraud and not capable of creating renewable fuel. Extensive and expensive litigation ensued as a result. The inability of the Plant to produce a qualifying renewable fuel prevented the Debtor from collecting financial incentives in the form of RIN's and tax credits that was the only reason for profitability of the Plant. In addition, the quality of fuel produced was so bad that it caused significant problems for clients by destroying their fuel handling equipment. The Debtor was required to spend significant funds to fix the problem. The Debtor attempted to produce a non-qualifying product to be sold at a much reduced price without the financial incentives of the qualifying product. However, when the price of oil dropped significantly in late 2014 the Debtor could not produce the non-qualifying fuel at a profit.

The combination of the expensive litigation and the inability to sell a qualifying fuel led to the insolvency of the Debtor and the shut-down of its operation on or about late 2014. The Debtor filed a first bankruptcy on December 17, 2015 but did not have financial resources, or

economic conditions with respect to the price of oil, to successfully reorganize and acquiesced to a dismissal of the case on May 20, 2016.

Since the dismissal, the price of oil rebounded along with the Debtor's process to sell its services and technology and has attracted parties interested in participating in its reorganization which led to the present petition filing.

Because the Debtor's prior operation had shut down and the Debtor no longer has the Plant and equipment it used in the past to directly treat waste water for the customers, the only initial business the Debtor can presently conduct is the licensing of its Proprietary Technology and the providing of support services for the same like it had previously done on occasion back when it was still a going concern. The present service and licensing agreement the Debtor is requesting authority from this Court to enter into is this kind of agreement.

The terms of the services and licensing agreement the Debtor seeks authority to enter into is set forth in the Agreement attached hereto as Exhibit 1. The licensee is a Canadian company, Ridgeline Canada, Inc. ("RCI"). The highlight summary of the terms is as follows:

1) The Debtor shall receive an initial payment of $50,000 payable on the closing to provide to RCI the services and rights for the specific geographical license area for the use of the Proprietary Technology that covers a radius of 200 kilometers around the city of Lloydminster Alberta in the province of Alberta and Saskatchewan, Canada. The closing date shall be March 30th though it can be extended to a later date if both parties agree in writing.

2) Additionally, for all installations or uses of the Proprietary Technology, RDX will receive from RCI a royalty of $0.25/barrel of volume processed, payable quarterly, 15 days after the end of each quarter.

3) The pre-royalty rate shall be $10,000/month (1,200,000 barrels x $0.50/barrel x 20%/12 months).

4) RCI shall have the right to represent the RDX's waste water treatment and solids dewatering technology and energy recovery processes, the Proprietary Technology,

in the specific geographical license area and other areas of Western Canada not granted to any other entity in the oil and gas industry. If a new specific geographical license area is identified, RCI shall have the first rights of refusal to that specific geographical license area.

5) RCI will be subject to a confidentiality provision with respect to the Proprietary Technology.

6) The Debtor may cancel the Agreement if less than $150,000 of revenue per year is generated for the Debtor.

The Debtor estimates that it will cost approximately $10,000 to $15,000 a year to service the Agreement. The licensing of the technology is not exclusive to RCI outside of the 200 kilometer radius around Lloydminster, Alberta Canada. Tony Ker ("Mr. Ker"), the acting CEO and director of the Debtor, holds a 2.5% interest in RCI. The Debtor believes that the Agreement is on commercially reasonable terms and not inappropriately favorable to RCI on account of Mr. Ker's interest in RCI. Rather the Debtor is getting the benefit of Mr. Ker being able to bring RCI to it.

The Agreement is not exclusive and the Debtor anticipates doing more with other parties in the future.

## II. DISCUSSION

Pursuant to 11 U.S.C. § 363, the Debtor may use its property out of the ordinary course of business when in the best interests of the estate. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841–842 (Bankr. C.D. Cal. 1991) (Courts must determine that there is a sufficient business reason and find that it is in the best interest of the estate when approving any outside the ordinary course of business transaction).

The Debtor has engaged in similar licensing of the Proprietary Technology in the past, thus making the present transaction potentially in the ordinary course. However, because the Debtor had ceased to be a going concern, the Debtor is going to presently error in seeking court

approval of the Agreement and authority to enter into similar agreements going forward as ordinary course.

The Debtor does not have its own equipment or plant anymore to directly provide waste water treatment services to customers as it predominately did in the past so it must, at least initially, license the Proprietary Technology, like it had done on occasion in the past, to start to generate revenue. The Agreement will bring $50,000 into the estate immediately and a minimum of $10,000 for the months thereafter. The Debtor anticipates the Agreement generating at least $150,000 a year to the Debtor, and if it does not, the Debtor has the ability to terminate the Agreement. The Agreement is not exclusive except for the 200 kilometer radius area set forth. Mr. Ker's interest in RCI is not causing any loss or unfavorable terms, but rather facilitated the Debtor getting the licensing opportunity. The Debtor is unaware of another opportunity to license the Proprietary Technology for more as to the subject 200 kilometer radius area. The Agreement is in the best interests of the estate.

### III. CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an Order:

A. Approving the entry into the Agreement attached hereto as Exhibit 1 in its entirety pursuant to 11 U.S.C. § 363;

B. Deeming similar prospective agreements to the Agreement to be ordinary course within the meaning of 11 U.S.C. § 363.

C. For such other relief the Court deems necessary and appropriate under the facts before the Court.

DATED this 19th day of March, 2018.

LAW OFFICE OF MARK J. GIUNTA

By   /s/  Mark J. Giunta SBN 015079
    Mark J. Giunta, Esq.
    Liz Nguyen, Esq.
    *Attorneys for Debtor*

| | |
|---|---|
| 1 | A Copy of the foregoing was electronically filed |
| | This 19th day of March, 2018 with the U.S. Bankruptcy Court. |
| 2 | |
| 3 | COPY of the foregoing mailed (and/or served via |
| | fax* or e-mail** if so marked) 19th day of March, 2018, to: |
| 4 | |
| | J. Henk Taylor *htaylor@rrulaw.com |
| 5 | RYAN RAPP & UNDERWOOD, P.L.C. |
| | 3200 North Central Avenue, Suite 2250 |
| 6 | Phoenix, Arizona 85012 |
| | *Attorney for CWT Canada II LP* |
| 7 | |
| | Christopher J. Pattock *christopher.j.pattock@usdoj.gov |
| 8 | Office of the United States Trustee |
| | 230 North First Avenue, Suite 204 |
| 9 | Phoenix, Arizona 85003 |
| 10 | |
| | Joshua Wurtzel *jwurtzel@schlamstone.com |
| 11 | Jeffrey M. Eilender *jeilender@schlamstone.com |
| | Bradley J. Nash *bnash@shalamstone.com |
| 12 | Schlam Stone and Dolan LLP |
| | 26 Broadway |
| 13 | New York, NY 10004 |
| | *Attorneys for CWT Canada II LP* |
| 14 | |
| | United States Trustee |
| 15 | 230 North First Avenue, Suite 204 |
| | Phoenix, AZ 85003-1706 |
| 16 | |
| 17 | Logan Schutz_____ |

# EXHIBIT 1




11) This Letter Agreement shall be subject to and governed in accordance with the laws of the Province of Alberta and any applicable laws of Canada, and the parties hereby attorn to the jurisdiction of the Courts of the Province of Alberta.

12) Time shall be of the essence.

13) The parties shall execute such of the documents and do such other things that may be reasonably necessary to give full effect to the transactions contemplated hereby.

14) This Agreement may be executed in one or more counterparts and by facsimile, each of which when so executed shall be deemed an original, but all of which taken together shall constitute one and the same document.

**NOTICE**

15) Any notices to be given by either party to the other under this Letter Agreement may be effected either by personal delivery in writing or by registered or certified, postage prepaid with return receipt requested. Mail notices must be addressed to the respective parties at the addresses appearing in this Letter Agreement.

Yours truly,

**RIDGELINE CANADA INC.**

_____

Tyler Heathcote, President

ACCEPTED BY THE UNDERSIGNED ON THIS __6__ DAY OF February, 2018.

**RDX TECHNOLOGIES CORPORATION**

ridgelinecanada.com  ☎ 403.806.2380  📠 403.806.2381


#101, 3016- 19th Street N.E.
Calgary, AB  T2E-6Y9

**February 1st, 2018**

RDX Technologies Corporation
Scottsdale Arizona
USA

Dear Mr. Ker,

**RE:     Letter of Intent to engage the services of RDX Technologies Corporation.**

The purpose of this binding letter agreement (the **"Letter Agreement"**) is to set forth the terms of an engagement under which Ridgeline Canada Inc. ("**RCI**") will acquire rights, services and equipment from **RDX Technologies Corporation** ("RDX"). In addition, RCI will acquire the exclusive license to use RDX proprietary technology in specific geographical areas.

### TERMS AND CONDITIONS OF PURCHASE

1) RCI agrees to purchase from RDX, and RDX agrees to sell to RCI the services and rights identified in Schedule A, effective as of the Effective Date, on the terms and conditions set out in this Agreement.
2) RCI will pay RDX for the rights and services as follows:
   a. Exclusive Geographical marketing and service rights $US50,000 payable on closing.
   b. Royalty of $US0.50/barrel of volume processed
   c. Pre-royalty fee of 10% of the monthly targeted volumes identified in Schedule A to be generated in the twelve months following the effective date, $US10,000 per month payable monthly, to be credited to Royalties when processing occurs.
   d. RDX will provide materials and technical support to the RCI for use in the proprietary process at cost plus no more than forty-five percent (50%) (**"Premium"**). RCI agrees that RDX will be the sole provider of any reagents.
3) RCI will be entitled to the rights and services in this agreement as long as a minimum of $150,000 of revenue per year is generated for RDX or as such time that RCI notifies RDX that is wishes to terminate the agreement.

### CONDITIONS PRECEDENT TO CLOSING

4) The Closing will be subject to the satisfaction of the conditions precedent, which shall include but not be limited to:
   a. Satisfactory determination that the prospective business operations of RDX will comply with all applicable laws and regulations;
ridgelinecanada.com

☎ 403.806.2380
📠 403.806.2381




**COVENANTS OF RDX**

5) RDX agrees with RCI that:
   a. That RDX will conduct its business in the ordinary course from the date hereof to the Closing; and
   b. Upon acceptance of this Letter Agreement, and for so long as it remains in force and effect, RDX shall cease and not conduct any further negotiations, discussions or entertain any offers from or with any prospective purchaser of RDX services or licenses in the identified geographic areas.

**CONFIDENTIALITY**

6) If this proposal is terminated as provided in Section 8 below, each party upon request will promptly return to the other party all documents, contracts, records, or other information of any kind received or compiled by it that contain, disclose or embody confidential information of the other party. RCI agrees to keep all material and information provided to it in order to complete its due diligence review of RDX confidential and to promptly return the same to RDX upon termination of this Letter Agreement. The provisions of this Section shall survive termination of this Letter Agreement.

**ACCEPTANCE**

7) If the terms of this Letter Agreement are acceptable, kindly indicate your agreement in the space provided below and return a duly executed copy of this Letter Agreement to RCI on or before 5:00 p.m. (Calgary Time) on February 9, 2018 in digital PDF format to tyler@ridgelinecanada.com..

**TERMINATION**

8) This Letter Agreement shall terminate forthwith if a Closing shall not have taken place by March 30th, 2018 the "**Effective Date**" or such other later date as the parties may agree to in writing. In the event of a default by either party of its obligations pursuant hereto, the obligations of the other party shall, at its option, terminate forthwith.

**GENERAL**

9) Each of RCI and RDX will be responsible for its own legal, accounting and other costs.

10) The agreement formed by the acceptance of the terms and conditions set out in this Letter Agreement shall enure to the benefit of and be binding upon the parties, their respective heirs, executors, administrators, successors and assigns.



11) This Letter Agreement shall be subject to and governed in accordance with the laws of the Province of Alberta and any applicable laws of Canada, and the parties hereby attorn to the jurisdiction of the Courts of the Province of Alberta.

12) Time shall be of the essence.

13) The parties shall execute such of the documents and do such other things that may be reasonably necessary to give full effect to the transactions contemplated hereby.

14) This Agreement may be executed in one or more counterparts and by facsimile, each of which when so executed shall be deemed an original, but all of which taken together shall constitute one and the same document.

**NOTICE**

15) Any notices to be given by either party to the other under this Letter Agreement may be effected either by personal delivery in writing or by registered or certified, postage prepaid with return receipt requested. Mail notices must be addressed to the respective parties at the addresses appearing in this Letter Agreement.

Yours truly,

**RIDGELINE CANADA INC.**

_____    _____
Tyler Heathcote, President


**ACCEPTED BY THE UNDERSIGNED ON THIS ____ DAY OF, 2018.**

**RDX TECHNOLOGIES CORPORATION**



Name: _____

## SCHEDULE A

**Specific Geographical License Area (SGLA):**

The SGLA will cover a radius of 200 kilometers around the city of Lloydminster Alberta in the provinces of Alberta and Saskatchewan.

**Royalty Rate:**
For all installations or uses of the proprietary technology RDX will receive from RCI a Royalty of $US0.25/barrel of volume processed, payable Quarterly, 15 days after Quarter end.

**Pre-Royalty:**
RCI agrees that a minimum projected revenue from the rights and services for the Lloydminster SGLA will be 1,200,000 barrels per year, equating to a pre-Royalty rate of 1,200,000 barrels x $US0.50/barrel x 20% / 12 months = $10,000/month.

RCI will have the right to represent the RDX's waste water treatment and solids dewatering technology and energy recovery processes in the SGLA and other areas of Western Canada not granted to any other entity in the oil and gas industry. If a new SGLA is identified RCI will have first rights of refusal to that SGLA.