Mark J. Giunta (#015079)
Liz Nguyen (#030282)
Law Office of Mark J. Giunta
531 East Thomas Road, Suite 200
Phoenix, Arizona 85012
Phone (602) 307-0837
Fax (602) 307-0838
Email markgiunta@giuntalaw.com
Email liz@giuntalaw.com

*Attorneys for Debtor RDX Technologies Corporation*

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceeding |
| RDX TECHNOLOGIES CORPORATION, | Case No. 2:17-bk-14387-PS |
| Debtor. | |

## DISCLOSURE STATEMENT IN SUPPORT OF

## PLAN OF REORGANIZATION DATED APRIL 4th, 2018

# Table of Contents

ARTICLE I – Deadline for Receipt of Ballots ................................................................ 4

ARTICLE II – Deadline for Filing Proofs of Claim Arising from Rejection of Unexpired Leases and Executory Contracts ................................................................ 4

ARTICLE III – Date and Time of Hearing on Confirmation of the Plan ...................... 5

ARTICLE IV – Introduction to the Disclosure Statement ............................................. 5

ARTICLE V – Disclaimers and Warnings ...................................................................... 6

ARTICLE VI - Voting ..................................................................................................... 10

    A.    Entities Entiled to Vote and Admonition to Vote if Eligible. ....................... 10

    B.    Voting Instructions. ..................................................................................... 11

    C.    The Results of Balloting on the plan are Determined by Class ................... 12

    D.    Confirmation Based Upon Acceptance of the Plan by All Impaired Classes ............... 12

    E.    Confirmation Over the Rejection of One or More Impaired Class. .............. 13

    F.    Consequences If the Plan is Not Confirmed ............................................... 13

ARTICLE VII – Description of the Debtor and Its Operations ...................................... 14

    A.    History and Background ............................................................................... 14

    B.    Principal Equity Holders ............................................................................. 17

    C.    Assets Owned and Present Status and Developments of the Debtor. ......... 17

    D.    Events Leading to Filing of Chapter 11 Petition ........................................ 18

    E.    Additional Post-Petition Developments and Operations ............................. 19

ARTICLE VIII – Summary of Plan ................................................................................ 20

    A.    Objective of the Reorganization .................................................................. 21

    B.    Management of the Reorganized Debtor Pending Confirmation .................. 26

    C.    Post-Confirmation Business Operations ..................................................... 26

    D.    Acceptance and Rejection of Executory Contracts ..................................... 26

E.      Plan Definitions, Classification, Impairment, Voting and Treatment of Claims, Implementation, and Miscellaneous ........................................................................................ 27

# ARTICLE I

## DEADLINE FOR RECEIPT OF BALLOTS

INSTRUCTIONS AND EXPLANATIONS CONCERNING VOTING ON THE PLAN ARE SET FORTH IN SUBSEQUENT SECTIONS OF THIS DISCLOSURE STATEMENT. PLEASE REVIEW THOSE SECTIONS CAREFULLY AND NOTE THAT <u>ALL BALLOTS MUST BE RECEIVED BY THE DEADLINE SET FORTH IN ACCOMPANYING ORDER APPROVING THIS DISCLOSURE STATEMENT, OR THEY MAY NOT BE COUNTED</u>. AS DELAYS IN THE DELIVERY OF MAIL CAN OCCUR, THE PLAN PROPONENTS URGE YOU TO MAIL OR DELIVER YOUR BALLOTS AS DIRECTED WELL IN ADVANCE OF THE DEADLINE.

VOTING ON THE PLAN WILL AFFECT YOUR RIGHTS AND THE EXPENSES INCURRED TO ADMINISTER THIS CASE. IN PARTICULAR, THE DEBTOR MAY BE ABLE TO REDUCE THE ADDITIONAL ATTORNEYS' FEES AND COSTS IT MIGHT HAVE TO INCUR TO OBTAIN CONFIRMATION OF ITS PLAN IF THE PLAN IS ACCEPTED BY ALL CLASSES OF CLAIMS AND INTERESTS CREATED BY THE PLAN. THE DEBTOR REQUESTS, THEREFORE, THAT YOU VOTE IF YOU ARE ENTITLED TO DO SO AND THAT YOU **TAKE STEPS TO ENSURE THAT YOUR BALLOT IS RECEIVED IN TIME TO BE COUNTED**.

## ARTICLE II

## DEADLINE FOR FILING PROOFS OF CLAIMS ARISING FROM REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS

The Plan provides for the rejection, as permitted by section 365 of the Bankruptcy Code, of certain unexpired leases and contracts which the debtor, RDX Technologies Corporation, (hereinafter known as the "Debtor"), has identified as "executory contracts." Those leases and

contracts are identified in this Disclosure Statement, which also sets a deadline for filing proofs of all claims which might arise as the result of the rejection.

If you have a contract with the Debtor, review the identified provision of this Disclosure Statement and **timely file your proof of any claim to which you may be entitled with the Clerk of the Bankruptcy Court at the following address or your claim will likely be forever barred**:

> Clerk, U.S. Bankruptcy Court
> 230 North First Avenue, Suite 101
> Phoenix, Arizona  85003-1706

## ARTICLE III

## DATE AND TIME OF HEARING ON CONFIRMATION OF THE PLAN

A copy of the Plan is attached as **Exhibit 1** to this Disclosure Statement. A hearing on confirmation of the Plan will be held before the Honorable Paul Sala, United States Bankruptcy Judge, commencing at a time and place set forth in the accompanying Order approving this Disclosure Statement. The hearing may be continued from time to time without further written notice.

## ARTICLE IV

## INTRODUCTION TO THE DISCLOSURE STATEMENT

Unless otherwise defined in the Appendix attached to the Plan, the terms used in this Disclosure Statement have the same meanings as those terms have in the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Code"), or as those terms have in the Federal Rules of Bankruptcy Procedure, promulgated pursuant to 28 U.S.C. § 2075 or in the Plan.

This Disclosure Statement is being submitted by the Debtor RDX Technologies Corporation. The Debtor has promulgated this Disclosure Statement in accordance with section

1125 of the Code for the purpose of soliciting acceptances of the Plan from holders of impaired claims and equity interests. This Disclosure Statement has been compiled to incorporate "adequate information" to enable creditors to make an informed judgment as to whether they should vote to accept or reject the Plan.

The Bankruptcy Court will have approved this Disclosure Statement on the date of the accompanying Order as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each of the classes of claims and interests being solicited to make an informed judgment whether to vote to accept or reject the Plan.

**ARTICLE V**

**DISCLAIMERS AND WARNINGS**

THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT CONSTITUTES NEITHER A CERTIFICATION THAT THE FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS ACCURATE NOR AN ENDORSEMENT OF THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PROMULGATED BY THE PROPONENT IN AN EFFORT TO SOLICIT CREDITORS AND EQUITY INTEREST HOLDERS TO VOTE TO ACCEPT THE PLAN. THE SOLICITATION IS A SOLICITATION BY THE PROPONENT ONLY. IT IS NOT A SOLICITATION BY THE ATTORNEYS OR ACCOUNTANTS, AND THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE PROPONENT AND NOT OF THE DEBTOR'S ATTORNEYS OR ACCOUNTANTS.

THIS DISCLOSURE STATEMENT IS NOT THE PLAN (SEE SUMMARY OF THE PLAN HEREIN). THIS DISCLOSURE STATEMENT AND THE COMPLETE COPY OF THE PLAN, WHICH IS ATTACHED, SHOULD BOTH BE READ IN THEIR ENTIRETY. FOR THE CONVENIENCE OF CREDITORS AND EQUITY INTEREST HOLDERS, THE PLAN

IS SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT THE PLAN ITSELF AND NOT THE PLAN SUMMARY IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY BETWEEN THE TWO.

CERTAIN MATERIALS CONTAINED IN THIS DISCLOSURE STATEMENT ARE TAKEN DIRECTLY FROM OTHER, READILY ACCESSIBLE DOCUMENTS OR ARE DIGESTS OF DOCUMENTS. WHILE EFFORTS HAVE BEEN MADE TO CONVEY ACCURATELY THE CONTENTS OF SUCH DOCUMENTS, YOU ARE URGED TO EXAMINE THE DOCUMENTS THEMSELVES AND TO USE THE DESCRIPTIONS OF DOCUMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ONLY AFTER HAVING CONDUCTED SUCH AN EXAMINATION.

NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ITS FUTURE BUSINESS OPERATIONS, THE VALUE OF ITS PROPERTY, OR THE VALUE OF SECURITIES TO BE ISSUED PURSUANT TO THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. IN ARRIVING AT YOUR DECISION TO ACCEPT OR REJECT THE PLAN, YOU SHOULD NOT RELY UPON ANY REPRESENTATIONS OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN THAT ARE OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT. SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE PROPONENT WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

EFFORTS HAVE BEEN MADE TO PREPARE ALL UNAUDITED FINANCIAL STATEMENTS THAT MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT IN

ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPALS. HOWEVER, AS TO ALL FINANCIAL STATEMENTS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE ACCURACY OF THE INFORMATION CONTAINED IN THOSE STATEMENTS TO BE WITHOUT ERROR.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO AN EXAMINATION BY INDEPENDENT, CERTIFIED PUBLIC ACCOUNTANTS. THE REPRESENTATIVE OF THE DEBTOR, ANTHONY KER, IS THE SOURCE OF ALL FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR HAS KEPT RECORDS SUBSEQUENT TO THE FILING OF THE PETITION COMMENCING THIS CASE AND THE DEBTOR HAS FILED MONTHLY FINANCIAL REPORTS WITH THE COURT.

THE LIQUIDATION ANALYSIS CONTAINED IN THIS DISCLOSURE STATEMENT ATTACHED AS **EXHIBIT 2** WAS NEITHER COMPILED NOR SUBJECTED TO AN AUDIT OR EXAMINATION BY INDEPENDENT, CERTIFIED PUBLIC ACCOUNTANTS. THE LIQUIDATION ANALYSIS AND THIS DISCLOSURE STATEMENT HAVE BEEN PREPARED WITH INFORMATION PROVIDED BY ANTHONY KER.

ANY SECURITIES OF THE REORGANIZED DEBTOR AND THE OPERATING SUBSIDIARIES TO BE ISSUED PURSUANT TO THE PLAN HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY GOVERNMENTAL AGENCY UNDER THE LAWS OF ANY STATE. NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE'S GOVERNMENTAL AGENCY HAS APPROVED OR DISAPPROVED SUCH SECURITIES OR PASSED UPON

THE ADEQUACY OR ACCURACY OF THE FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

**<u>IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU SHOULD DO SO</u>.** UNDER THE BANKRUPTCY CODE, DETERMINING THE OUTCOME OF BALLOTING ON THE PLAN REQUIRES A CALCULATION THAT CONSIDERS THE VOTES OF THOSE CREDITORS AND EQUITY INTEREST HOLDERS WHO ACTUALLY VOTED ON THE PLAN. YOUR RIGHTS MAY BE AFFECTED EVEN IF YOU DO NOT VOTE ON THE PLAN. YOUR OPPORTUNITY TO HAVE THE OUTCOME YOU DESIRE WILL LIKELY BE ENHANCED IF YOU VOTE.

NOTHING IN THIS DISCLOSURE STATEMENT OR THE PLAN LIMITS THE DEBTOR'S RIGHTS TO OBJECT TO ANY PROOFS OF CLAIMS OR INTERESTS FILED IN THIS CASE.

BECAUSE THE PROPONENT DOES NOT EXPRESS ANY OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN, IN NO EVENT WILL THE DEBTOR, OR ITS PROFESSIONAL ADVISORS THEY HAVE ENGAGED, BE LIABLE IF, FOR ANY REASON, THE TAX CONSEQUENCES OF THE PLAN ARE NOT AS ANTICIPATED BY CREDITORS AND EQUITY INTEREST HOLDERS. CREDITORS AND EQUITY INTEREST HOLDERS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THE PLAN.

//

//

//

//

# ARTICLE VI

## VOTING

**A.     ENTITIES ENTITLED TO VOTE AND ADMONITION TO VOTE IF ELIGIBLE.**

Only creditors and equity interest holders whose claims and interests have been both **allowed** for purposes of voting and **impaired** by the Plan are entitled to vote on the Plan.

For a claim to be allowed for voting purposes, the claim must be listed in the Debtor's Chapter 11 schedules **and** must **not** be listed as "disputed", "contingent" or "unliquidated". If a claim is listed but shown as "disputed", "contingent" or "unliquidated", the holder of the claim will not be entitled to vote absent the timely filing of a proof of claim.

If a claim is not listed or is listed as "disputed," "contingent," or "unliquidated," the holder of the claim must file a proof of claim on or before the bar date set by the Court (or the Debtor must file a proof of claim for that creditor as permitted by the Federal Rules of Bankruptcy Procedure) for that creditor to be entitled to vote. Moreover, no holder of a claim will be entitled to vote if any party in interest objects to that claim before balloting on the Plan or any Amended Plan occurs, unless the Bankruptcy Court enters a specific order allowing the claim for voting purposes.

For an equity interest to be allowed, the equity interest holder's asserted interest must appear in the Debtor's schedules or the holder of the equity interest must file a proof of interest before the bar date set by the Court (or the Debtor must do so for the interest holder as permitted by the Federal Rules of Bankruptcy Procedure), and the equity interest holder must be a record holder of the Debtor's securities on the date of the order approving this Disclosure Statement is entered on the Court's docket. In addition, no entity claiming to hold an equity interest may vote if any party in interest has objected to the allowance of the asserted interest prior to voting on the

Plan or any Amended Plan, unless the Bankruptcy Court enters an order allowing the interest for voting purposes.

In addition to the foregoing criteria for voting eligibility, only creditors and equity interest holders whose claims or interests are "impaired" by the Plan (i.e., those whose claims or interests are altered or who will not receive the allowed amount of their claims in cash pursuant to the original terms of their agreements) are entitled to vote to accept or reject the Plan. Holders of claims or interests which are not "impaired" are deemed to have accepted the Plan as a matter of law.

If the claim or interest you hold has been classified in one of the impaired classes of claims or interests created by the Plan (see Exhibit "1"), it is important that you vote. In addition, if you hold more than one claim or interest classified as "impaired" under the Plan, it is important that you vote with respect to **each** such claim or interest. **IF YOU FAIL TO VOTE, YOUR RIGHTS MAY BE JEOPARDIZED**.

**B.    VOTING INSTRUCTIONS.**

After carefully reviewing this Disclosure Statement and its exhibits, vote to accept or reject the Plan on the enclosed ballot (or ballots) and mail or deliver it (or them) to the addresses identified below so that your ballot (or ballots) are **received by the bar date specified**.

All ballots must be signed and received prior to the deadline set forth by the Court in the accompanying Order approving this Disclosure Statement. Mail or deliver all ballots to the Debtor's attorney at the following address:

Mark J. Giunta, Esq.
Law Office of Mark J. Giunta
531 East Thomas Road, Suite 200
Phoenix, Arizona 85012
FAX:  (602) 307-0838
Email:  markgiunta@giuntalaw.com

AS MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED **WELL IN ADVANCE** OF THE BAR DATE SPECIFIED. BALLOTS RECEIVED AFTER THIS DATE MAY NOT BE COUNTED. IF A VOTING CREDITOR HAS ANY QUESTIONS PLEASE CALL DEBTOR'S COUNSEL'S OFFICE AT (602) 307-0837.

Each creditor entitled to vote is to receive a ballot for each separately classified, impaired claim held. Each equity interest holder entitled to vote is also to receive a ballot.

If you do not receive the required number of ballots, with your copy of the Court approved disclosure statement, notify the proponent's attorneys immediately at the address noted above. **IT IS IMPORTANT FOR YOU TO CAST ALL BALLOTS WHICH YOU ARE ENTITLED TO VOTE.**

C.      **THE RESULTS OF BALLOTING ON THE PLAN ARE DETERMINED BY CLASS.**

In general, a class of claims accepts the Plan if the creditors who vote to accept the Plan hold at least two-thirds (2/3) in dollar amount and constitute more than one-half (1/2) in number of the allowed claims in the class **actually voting** on the Plan. In general, a class of equity interests accepts the Plan if it is accepted by those who hold at least two-thirds (2/3) of the allowed interests in the class **actually voting** on the Plan.

D.      **CONFIRMATION BASED UPON ACCEPTANCE OF THE PLAN BY ALL IMPAIRED CLASSES.**

If each class of impaired claims and interests accept the Plan and the Plan is confirmed, the Plan will bind all holders of claims and interests, including those who did not vote and those who voted to reject the Plan.

**THE PROPONENT RECOMMENDS THAT ALL THOSE ENTITLED TO VOTE CAST THEIR BALLOTS TO ACCEPT THE PLAN.**

The Plan may also be confirmed if all impaired classes do not accept it, so long as the Plan is accepted by at least one class of impaired claims. Confirmation over the rejection of one or more classes of claims or interests is called "cramdown."

**E.    CONFIRMATION OVER THE REJECTION OF ONE OR MORE IMPAIRED CLASS.**

If the Plan is rejected by one or more impaired classes of claims or interests, the Plan or modification thereof may still be confirmed by the Court at the request of the Proponent(s). To grant such a request, the Court must find, among other things, that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting, impaired class of claims or interests.

The phrases "discriminate unfairly" and "fair and equitable" are defined by section 1129 of the Bankruptcy Code and the case law interpreting that statute. In other words, those phrases are "terms of art" denoting specific statutory criteria for confirmation which the Plan must satisfy to be confirmed by the Bankruptcy Court if any impaired class of claims or equity interests rejects the Plan.

The Plan does satisfy the statutory criteria required by section 1129 of the Bankruptcy Code, and the Proponents intend to request confirmation of the Plan in the event it is rejected by any impaired class.

**F.    CONSEQUENCES IF THE PLAN IS NOT CONFIRMED.**

If the Plan, or any modification thereof, is not accepted by one or more impaired classes of claims or interests or is not confirmed by the Court for other reasons, the case will likely be converted to a Chapter 7 proceeding and the estate liquidated by a Chapter 7 Trustee. The conversion would preclude reorganization, cause the Debtor's estate to incur an additional layer of Chapter 7 administrative costs, both of which would result in a pro rata distribution to

unsecured creditors by a Chapter 7 Trustee that would be approximately $3 million less than the aggregate distribution under the Plan proposed by the Debtor. *See* Exhibit 2, Liquidation Analysis.

**ARTICLE VII**

**DESCRIPTION OF THE DEBTOR AND ITS OPERATIONS**

A.    **HISTORY AND BACKGROUND.**

   I.    **Operations**

RDX Technologies Corporation ("RDX") is a foreign corporation domiciled in Canada since its incorporation on or about July 30, 2003[1]. The Debtor had operated an environmental service business in Alberta and a waste water treatment business for customers in the oil fracking industry. The Debtor directly provided the waste water treatment service to customers located in Canada, while a wholly owned United States subsidary of the Debtor, Ridgeline Energy Services (USA), Inc. ("Ridgeline USA"), provided the same waste water service to customers located in the United States. Essentially the Debtor provided the marketing of the waste water treatment service in Canada; and Ridgeline USA marketed the same services in the United States.

RDX' waste water treatment business was for a time successful at its height generating approximately $CDN 30 MILLION in revenues.

Both the Debtor and Ridgeline USA used a proprietary process and technology, i.e., trade secrets (hereinafter "Proprietary Technology"), in the delivery of the waste water treatment service. The Proprietary Technology was developed by Dennis Danzik ("Danzik"), who remains to this day critical for its deployment and ongoing development. Danzik held the Proprietary Technology in affiliated entities controlled by him. Danzik served as the chief operating officer of Ridgeline USA and held significant equity in the Debtor.

---

[1] The Debtor's original corporate name was "Ridgeline Energy Services Inc." until it was changed to "RDX Technologies Corporation" on 21 August 2013.

The Proprietary Technology was acquired from Danzik and his affiliate in April 4, 2011 pursuant to a Purchase Agreement dated April 4, 2011 ("Purchase Agreement") whereby Danzik transferred the Proprietary Technology to Danzik Hydrologic Sciences, LLC ("DHS") and the Debtor acquired 100% membership interest in DHS. DHS has no other assets or any liabilities. Language in the Purchase Agreement indicated that the Debtor also directly acquired control of the Proprietary Technology through the acquisition of the DHS equity.

In addition to directly providing waste water treatment services, the Debtor occasionally licensed the Proprietary Technology to users located in Canada rather than undertake the user's waste water treatment directly. The Debtor did so with the belief that it could under the terms of the Purchase Agreement.

On or about May 2013, the Debtor entered into an agreement to purchase a plant (the "Plant") to process waste products into renewable fuel that would qualify under the Energy Policy Act from Changing World Technologies, L.P., a Delaware limited partnership "CWT." The CWT acquisition was anticipated to compliment the RDX waste water treatment technology. RDX technology would collect waste water with oils, fats and grease in the water. The RDX technology would strip out the oil, fat and grease and treat the water for cleaner disposal. CWT Missouri facility and the associated technology was represented to convert the oils, fats and grease collected by the RDX technology and convert it to a Renewable diesel eligible for the federal program of RINS and tax credit for the production and sale of renewable diesel. Unfortunately, the Plant turned out to be a fraud and not capable of creating renewable fuel. Extensive and expensive litigation ensued as a result. The inability of the Plant to produce a qualifying renewable fuel prevented the Debtor from collecting financial incentives in the form of RINs and tax credits that was the only reason for profitability of the Plant. In addition, the quality of fuel produced was so bad that it caused significant problems for clients by destroying their fuel handling equipment. The Debtor was required to spend significant funds to fix the problem. The Debtor attempted to produce a non-qualifying product to be sold at a significantly reduced price without the financial incentives of the qualifying product. However,

when the price of oil dropped significantly in late 2014 the Debtor could not produce the non-qualifying fuel at a profit.

The combination of the expensive litigation and the inability to sell a qualifying fuel led to the insolvency of the Debtor and the shut-down of its and its subsidiaries' operations on or about late 2014. In addition, CWT and associates, legal counsel made every effort to thwart RDX from remaining in business by calling many of RDX clients or potential clients and providing negative information about RDX. The Debtor filed a first bankruptcy on December 17, 2015 but did not have financial resources, or economic conditions with respect to the price of oil, to successfully reorganize and acquiesced to a dismissal of the case on May 20, 2016.

Since the dismissal, the price of oil rebounded along with the Debtor's process to sell its services and technology and has attracted parties interested in participating in its reorganization which led to the present petition filing.

## II.     Litigation

In 2013, GEM Holdco, LLC ("GEM") filed a lawsuit against the Debtor (and others) in New York, styled *GEM Holdco, LLC et al. v. CWT Canada II Limited Partnership et al.*, Index 650841/2013, New York Supreme Court, County of New York ("First Action"). RDX and GEM reached a settlement agreement as RDX was believed to be indemnified by CWT for the GEM cause of action. The parties executed a confidential settlement agreement on September 22, 2014. Subsequently the settlement agreement failed for numerous reasons, one of them being that the TSX exchange did not accept the terms of the settlement agreement as GEM did not adhere to the TSX terms. GEM obtained a judgment against the Debtor in the amount of $7,033,491.13, and the Debtor is currently appealing two orders from the First Action.

The first appeal is from an Order dated June 3, 2016, in which the Debtor was held in contempt, and the second appeal is from an Order of Contempt and Commitment and Warrant of Arrest both dated November 8, 2017. Further, the Debtor anticipates bringing a motion in the lower

court to bring to the court's attention new evidence in which it will seek to vacate the judgment as wells as the other orders in the First Action.

In the same First Action, CWT Canada II Limited Partnership (as third-party plaintiffs) ("CWT") obtained a judgment against the Debtor in the amount of $649,131.09 on March 7, 2017.

In August 2014, RDX filed suit against CWT in the Court of Queen's Bench of Alberta for a variety of causes including fraud. This case is still on going and additional action is ongoing with additional claims and new evidence being added.

In 2015, GEM filed another lawsuit against the Debtor (and others) in New York, styled *GEM Holdco, LLC et al. v. RDX Technologies Corp.*, Index 653694/2015, New York Supreme Court, County of New York ("Second Action"). Summary judgment was against the Debtor in the amount of $9,023,534.49, and the Second Action is currently being appealed.

In 2016, CWT Canada II LP ("CWT") filed a lawsuit against the Debtor (and others) in the United State District Court District of Arizona, styled *CWT Canada II LP et al. v. Elizabeth Danzik et al.*, 2:16-cv-00607-DGC.

**B.      PRINCIPAL EQUITY HOLDERS.**

The equity holders of RDX are set forth below and in attached **Exhibit 3**.

| | |
|---|---|
| CWT Canada II Limited Partnership | 25.5% |
| Jade IV LLC | 11.5% |
| Clean Energies LLC | 10.3% |
| Deja II LLC | 9.5% |
| Resource Recovery Corporation | 8.5% |
| Dennis M. Danzik | 6.7% |
| Elizabeth Danzik | 6.3% |
| Anthony Ker | 4.6% |
| All Others | 17.1% |

**C.      ASSETS OWNED AND PRESENT STATUS AND DEVELOPMENTS OF THE DEBTOR.**

The Debtor has 100% equity interest in numerous entities as disclosed in its schedules and as listed below:

1. Ridgeline Energy Services (USA), Inc.
2. SFS Real Estate Recovery, LLC

3. Danzik Hydrological Sciences, LLC
4. RDX Energy Group, LLC
5. RDX Applied Technologies I, LLC
6. RDX Operations, Inc.
7. RDX Water Group, LLC
8. Changing World Technologies, LP
9. Renewable Environment Solutions, LLC
10. Thermo-Depolymertization Process, LLC

The only entity with value is Danzik Hydrological Sciences, LLC ("DHS") which holds the Proprietary Technology that the Debtor uses in the delivery of waste water treatment services as well as the licensing of the same. The Debtor values the Proprietary Technology at $425,000. The remaining entities are all empty non-operating shells with no assets that conduct no business.

The Debtor also believes that it holds claims against its Judgment Creditors including GEM and CWT and affiliates of the same that could be of significant value, but until appellate proceedings and motions to set aside said judgments are adjudicated the Debtor believes any market value the claims would have would be too speculative to quantify herein. *See* **Exhibit 4**, Amended Schedules.

## D. EVENTS LEADING TO FILING OF CHAPTER 11 PETITION.

The combination of the expensive litigation and the inability to sell a qualifying fuel led to the insolvency of the Debtor and the shut-down of its operation on or about late 2014. The Debtor filed a first bankruptcy on December 17, 2015 but did not have financial resources to successfully reorganize and acquiesced to a dismissal of the case on May 20, 2016.

Since the dismissal, the price of oil rebounded along with the Debtor's process to sell its services and technology and has attracted parties interested in participating in its reorganization which led to the present petition filing.

//

//

E.    **ADDITIONAL POST-PETITION DEVELOPMENTS AND OPERATIONS.**

    1.    **Post-petition Activity of the Debtor.**

After the commencement of Bankruptcy Case, the Debtor initially focused on complying with the administrative requirements of the Bankruptcy Code and the Office of the United States Trustee while continuing to maintain its Property, including, but not limited to, the Debtor's counsel filing an application to be employed by the estate.

The Debtor filed an application to employ special counsel (Dkt. 30) to handle the litigation pending in New York that was subsequently granted by this Court on February 20, 2018 (Dkt. 36).

The Debtor has been working with prospective plan investors and prospective waste water treatment customers and licensees to restart the waste water treatment business that will in part include entering into new licensing agreements.

The Debtor filed a *Motion to Approve Services and Licensing Agreement* on March 19, 2018 (Dkt. 39) and an accompanying motion to expedite hearing on same (Dkt. 40). An expedited hearing was held on March 27, 2018, wherein the Court continued the matter to April 24, 2018 and requested supplemental information.

The Debtor has formulated and prepared this disclosure statement and plan.

    2.    **Post-petition Retention of Professionals Other Than Management.**

Employment of Counsel.

On December 7, 2017, Mark J. Giunta was approved as counsel for the Debtor (Dkt. 7).

Employment of Special Counsel.

On February 20, 2018, Catafago Fini LLP was approved as special counsel for the Debtor (Dkt. 36).

Case 2:17-bk-14387-PS    Doc 49    Filed 04/04/18    Entered 04/04/18 20:49:54    Desc
Main Document    Page 19 of 50

3.    **Appointment of Creditors Committee.**

None as of the date of this Plan.

4.    **Plans of Reorganization.**

No other Plans have been filed in this matter except for the present one.

5.    **Stay Actions.**

No stay actions have been filed in this matter.

6.    **Exclusivity.**

The Debtor is within the period of exclusivity.

7.    **Cash Collateral.**

No motions for cash collateral have been filed at this time.

## ARTICLE VIII

## SUMMARY OF THE PLAN

This part of the Disclosure Statement summarizes the provisions of the Plan. The Plan, after it has been confirmed, will constitute a contract between the Debtor and its creditors and stockholders. This Disclosure Statement does not constitute such a contract. If any discrepancies exist between the Plan and the following summary of the Plan, the Plan will control. Therefore, it is advisable, as mentioned above, to review the Plan carefully for the full details of the treatment of Creditors and Equity Interest Holders.

Anthony Ker is the sole source of the financial information contained in the Disclosure Statement and Plan. No third party has audited or prepared the same.

**CREDITORS AND EQUITY INTEREST HOLDERS ARE URGED TO READ THE PLAN IN FULL. CREDITORS AND EQUITY INTEREST HOLDERS ARE FURTHER URGED TO CONSULT WITH THEIR COUNSEL TO OBTAIN A COMPLETE UNDERSTANDING OF THE PLAN**.

## A.    __OBJECTIVE OF THE REORGANIZATION.__

The objective of the Plan is to reorganize the Debtor as a going concern, restructure and service the debts, and pay creditors more than what they would receive in a Chapter 7 liquidation.

The core of the business plan centers on the following assumptions for success:

1) The water treatment business was a profitable and successful business prior to the bankruptcy. RDX became unprofitable by the acquisition of the CWT Refinery and the uncovered fraud that caused massive losses, lost business and the debilitating effect of the CWT and GEM lawsuits. In addition, CWT legal counsel and associates made concerted efforts to discredit RDX and tortiously interfere with RDX business opportunities. CWT did this by actively seeking out RDX clients and influencing the client negatively by mentioning the RDX lawsuit in New York. RDX believes that the confirmation of a plan and 11 U.S.C. § 1141 discharge will enable RDX to rebuild the business without this interference.

2) From 2014, the Oil and Gas industry has gone through a significant down turn that meant a lot of projects were cancelled or put on hold, both in the United States and Canada. This has changed dramatically since 2017, as the oil market has greatly improved. In addition, the Canadian market has seen new regulatory changes that will mean water treatment opportunities are increasing.

3) Key clients will provide the back bone of the initial startup business with Inductance Energy ("IEC"), Environmental Technologies ("ET"), and Quantum Energy ("QE") being the main clients for RDX IP and service offerings in water treatment and related oilfield services.

4) In addition, RDX has the opportunity to sign long term, 5-year manufacturing licenses with several companies that require oilfield energy and water treatment equipment which RDX is experienced in designing and manufacturing such equipment.

**Re-organization Structure**

**IP:** RDX owns all the interests and assets of DHS (the entity that has Proprietary Technology) and it had been assumed based on a portion of the language in the Purchase Agreement that there was also a transfer of the IP to RDX. However, for clarity DHS will formally transfer the IP to RDX to the extent it has not already occurred no later than the Effective Date of the Plan.

**Shares:** The Plan needs funding to start the business and the Debtor has obtained capital funding from IEC and ET, where IEC and ET will provide on the Effective Date funds amounting to $650,000 ($500,000 + $150,000, respectively), and support, including a new facility lease in Scottsdale, Arizona, to allow the Debtor to begin manufacturing, and get the business going again. To facilitate this investment, the Plan calls for the cancellation of the Debtor's existing stock and issuance of new stock in the Reorganized Debtor as follows:

- 20,000,000 new shares will be authorized.

- 10,000,000 shared will be issued to IEC

- 3,000,000 shares will be issued to ET.

- 7,000,000 shares remain in treasury.

**Operations and Compensation**

Mr. Danzik, because of his unique knowledge and ability regarding the Proprietary Technology is an integral part of the business plan as the Proprietary Technology is based on trade secrets developed by Mr. Danzik and is virtually useless without his continued guidance and input. Post confirmation, Mr. Danzik will be charging the Debtor consulting fees, either directly or through an operating entity, for his assistance in deploying and developing the

Proprietary Technology. The amount of fees will be estimated to be, and shall not exceed in aggregate, $185,000.00[2] annually for his services to the Debtor and the Debtor's customers on the Debtor's behalf and it is included in the Cost of Goods Sold identified in the Financial Projections attached hereto as **Exhibit 5.**

As part of Danzik's services, he will immediately train new hires in the water treatment technology and will ultimately assist the Debtor in hiring and training a licensed water treatment professional so that technology applications can be managed at some point in the future without Mr. Danzik.

Mr. Ker will continue to serve as acting as the chief executive officer of the Debtor, be responsible for the management of the Debtor post-confirmation, and shall take an annual fee of $60,000 for the same. This payment is accounted for in the SG&A expenses identified in the Financial Projections attached hereto as Exhibit 5.

In addition to the IEC facilities there will be access to new facilities, beginning May 1, 2018, and staffing on a pay for use basis that will enable the Debtor to grow without hiring a significant number of personnel at the start.

**Market Development:** RDX has four primary methods for generating revenues. Following is a summary of the main business areas for RDX to capitalize on:

1) Licenses of the IP to customers who will use the IP for a fee only requiring, training, education and oversite.

2) Manufacture, install equipment – Fee for equipment, fee for license, training and oversite.

3) Manufacture, install and operate. – Fee for equipment, fee for license, fee for operating.

4) Manufacture Equipment and Sell.

---

[2] During the course of the year it is anticipated that fees charged will be irregular based on particular projects going at the moment but the aggregate cap of the same is as set forth herein.

5) New Manufacturing Licenses – RDX manufactures for direct oilfield and commercial water treatment systems.

**Business Growth:** Following is a list of current contracts ready for execution when the bankruptcy plan is approved:

1) **Ridgeline Canada Inc. – Alberta Canada**

RCI will pay RDX for the rights and services as follows:

a. Exclusive Geographical (Alberta) marketing and service rights with $150,000US payable on closing.

b. Royalty of CDN $0.50/barrel of volume processed.

c. Pre-royalty fee of 10% of the monthly targeted volumes identified in Schedule A to be generated in the twelve months following the effective date, $10,000US per month payable monthly, to be credited to Royalties when processing occurs.

d. RDX will provide materials and technical support to RCI for use in the proprietary process at cost plus no more than forty-five percent (45%). RDX agrees that RCI will be the sole provider of any reagents in Alberta.

2) **Inductance Energy Corporation - Nevada**

RDX will be entitled to the rights and services in an agreement to provide raw materials processing, including waste water equipment in Nevada, and Wyoming. IEC is willing to make a substantial equity investment in RDX ($500,000.00) provided that RDX control can be obtained by IEC through the RDX bankruptcy restructuring plan.

3) **Environmental Technologies – Arizona and Texas**

ET desires to execute a contract for raw materials, chemicals and know how to operate RDX style waste water evaporators in several mining and oil field States, but primarily in Arizona, Texas, and New Mexico. ET specializes in evaporative technologies and nitrate removal in produced, flowback, commercial and processing waste water streams.

**4) Quantum Energy, Inc. - Illinois**

QE is a publicly traded company, founded in 1994 that delivers refinery services in several states and is currently permitting a new refinery property in Saskatchewan, Canada. QE desires to contract with RDX for three direct waste water processing facilities in Texas, Oklahoma, and Wyoming. RDX beta demonstration sites built for QE would dramatically increase QE water revenues and would start to reestablish RDX treatment plants that will lead to increased recurring revenue for RDX.

**5) Additional Clients – United States and Canada**

RDX is in active discussions with the following companies that desire to license RDX technology and have access to RDX manufacturing: 1) Kellogg's Company – Battle Creek Michigan (former RDX client); 2) CARDEN Water LLC – Phoenix Arizona (former RDX client); 3) Okanae, Inc – Nevada (potential new client in food processing); 4) RH Farms, Inc – Wyoming (potential new client in aquaculture); 5) Canadian National Resources – Alberta (former RDX client), and 6) NovaEarth Inc. new client and oil field waste handling company in Alberta.

RDX has an excellent opportunity to return to and exceed its former revenue levels of greater than $20MM annually by methodically cultivating its former and new client opportunities in the United States and Canada. The projections for this plan are likely conservative, with the goal of increasing revenues and profits.

**<u>Feasiblity</u>**

As set forth in the Financial Projection, the Plan is feasible, and more likely to succeed than fail, in light of the new $650,000 capital infusion, and anticipated revenues and costs. *See* Exhibit 5. The Debtor will preserve its ability to prosecute its appellate and post-judgment/set aside rights and claim with respect to GEM and CWT and their affiliates, and do so, but no

revenue from said litigation is required for the Debtor to meet its obligations under the Financial Projections. *See id.*

**Best Interest of Creditors**

As set forth in the Financial Projections, the Plan will pay non-priority unsecured creditors an aggregate of $3,390,934, approximately $3,094,0690.16 more than they would get if the Plan was not confirmed and the Debtor was liquidated in a Chapter 7 bankruptcy. *See* Exhibit 2, Liquidation Analysis.

**B.  MANAGEMENT OF THE REORGANIZED DEBTOR PENDING CONFIRMATION.**

**1.  Management**

Anthony Ker, who is the acting CEO of the Debtor, will continue to manage the Debtor's affairs after the confirmation of the Plan. Dennis Danzik will provide consulting services to the Debtor post-confirmation to assist the Debtor in the deployment and development of the Proprietary Technology.

**2.  Compensation of the Management**

Mr. Ker will receive an annual $60,000 fee for post-confirmation management of the Debtor. Mr. Danzik shall receive a consulting fee his services over the course of a year and are estimated to be, and will be capped at, the annual aggregate of $185,000.

**C.  POST-CONFIRMATION BUSINESS OPERATIONS.**

The Debtor shall continue to maintain and manage its affairs and meet its other obligations under the Plan. The Debtor shall do so by executing the business plan described herein and depicted in the Financial Projections attached hereto as Exhibit 5.

**D.  ACCEPTANCE AND REJECTION OF EXECUTORY CONTRACTS.**

The Debtor has no executory contracts.

Pursuant to 11 U.S.C. § 365, the Debtor has rejected or hereby rejects pursuant to the Plan all other executory contracts not set forth in the preceding paragraph whether enumerated herein or not.

Any person or entity injured by such rejection shall be deemed to hold an unsecured claim against the Debtor to the extent allowed, and, **within ten (10) days before the initial hearing on confirmation of the Plan, must file a proof of claim for any damages resulting therefrom or be forever barred from asserting any claim.**

The Debtor reserves the right to apply to the Bankruptcy Court at any time prior to confirmation of the Plan to reject any and all other contracts which are executory.

**E.      PLAN DEFINITIONS, CLASSIFICATION, IMPAIRMENT, VOTING AND TREATMENT OF CLAIMS, IMPLEMENTATION, AND MISCELLANEOUS.**

### DEFINITIONS

**1.01      Defined Terms.** The capitalized terms used in this Plan shall have the meanings as set forth in **Appendix A** attached hereto.

**1.02      Undefined Terms.** Terms and phrases, whether capitalized or not, that are used and not defined in Appendix "A" attached hereto, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.

**1.03      Interpretation.** The headings in this Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

### CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01      General.** For the purposes of organization only with respect to administrative expenses, voting and all Confirmation matters with respect to all Claims of Creditors of the Debtor, this Plan classifies Claims in separate and distinct Classes as follows:

**2.02** **Class 1: Administrative Expenses.** Class 1 shall consist of the costs and expenses of administration as defined in section 503 of the Bankruptcy Code for which an application or allowance is made, or a Claim is filed, as the same are allowed, approved, and ordered paid by the Court. Administrative Expenses shall consist of: (1) all Claims arising under section 330 of the Bankruptcy Code, including reasonable compensation for actual and necessary services rendered by a professional person (including attorneys) and by any paraprofessional persons employed by such, based on, among other things, the nature, extent and value of such services, the time spent on such services, and the cost of comparable services other than in a case under Title 11; (2) the costs and expenses of the administration of this proceeding, including, but not limited to, any Bankruptcy Court Clerk fees or Court Reporter's fees that have not been paid, the cost of reproduction and mailing of this Plan and the Disclosure Statement; (3) any post-petition operating expenses of the Debtor that are due and unpaid at Confirmation; and (4) the actual and necessary costs of preserving the Estate.

As of March 31, 2018, the amount owed to Debtor's counsel, Mark J. Giunta, is approximately $30,692.49.

Class 1 also expressly includes any outstanding pre-confirmation quarterly fee payments owed by the Debtor to the United States Trustee.

**2.03** **Class 2: Priority Claims.** Class 2 consists of all Allowed obligations of the Debtor, including tax obligations, that are entitled to priority under section 507(a)(8) of the Bankruptcy Code.

The Colorado Department of Revenue has a priority claim in the amount of $3,925.16.

**2.04** **Class 3: Litigation Unsecured Claims.** Class 3 consists of the Allowed Claim of GEM Holdco, LLC of an approximate principal amount of $9,023,534.49, and the Allowed

Claim of CWT Canada II Limited Partnership, Resource Recovery Corporation, and Jean Noelting (hereinafter collectively, "CWT"), of an approximate principal amount of $7,033,491.13. Class 3 Claimants are judgment creditors involved in ongoing appellate and prospective post-judgment motions to set aside judgment and subject to potentially substantial claims by the Debtor.

2.05 **Class 4: Claims of Unsecured Trade Vendors.** Class 4 consists of all Allowed Claims of Unsecured Trade Vendors that the Debtor estimates to be no more than approximately $4,180,235.08. A list of the trade vendors is attached hereto as **Exhibit 6**. Unsecured Trade Vendors are claimants who had provided services and products to the Debtor for the Debtor's prior waste water treatment operation and could be in a position to obtain that same business again if the Debtor successfully reorganized.

2.06 **Class 5: Claims of General Unsecured Creditors.** Class 5 consists of all other Allowed Unsecured Claims not included in Classes 3 and 4 that the Debtor estimates to be no more than approximately $9,525,752.60. *See* Exhibit 6.

2.07 **Class 6: Equity Security Holders of RDX Technologies Corporation.** Class 6 consists of the interests of Equity Security Holders of RDX Technologies Corporation, which consists of:

| | |
|---|---|
| CWT Canada II Limited Partnership | 25.5% |
| Jade IV LLC | 11.5% |
| Clean Energies LLC | 10.3% |
| Deja II LLC | 9.5% |
| Resource Recovery Corporation | 8.5% |
| Dennis M. Danzik | 6.7% |
| Elizabeth Danzik | 6.3% |
| Anthony Ker | 4.6% |
| All Others | 17.1% |

2.08 **Elimination of Classes.** Any Class that is not occupied as of the date of the hearing on confirmation of this Plan by an Allowed Claim or a Claim temporarily allowed

pursuant to Rule 3019 of the Bankruptcy Rules shall be deemed deleted from this Plan for purposes of voting on acceptance or rejection of this Plan and for the purpose of determining whether this Plan has been accepted by such Class pursuant to section 1129 of the Bankruptcy Code.

## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.01** **Impaired Classes of Claims.** Classes 3, 4, 5, and 6 are impaired under this Plan. Administrative Expenses (Class 1) and Priority Tax Claims (Class 2) are treated in accordance with section 1129(a)(9) of the Bankruptcy Code unless otherwise agreed to by the claimant. All other classes are unimpaired.

**3.02** **Impairment Controversies.** If a controversy arises as to whether any Claim or any class of Claims is impaired under this Plan, such class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Class or Claim under this Plan.

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**4.01** **Classes Entitled to Vote.** Each impaired Class of Claims shall be entitled to vote separately to accept or reject this Plan. Any unimpaired Class of Claims shall not be entitled to vote to accept or reject this Plan.

**4.02** **Creditors Not Entitled to Vote.** Only Creditors holding Claims that are not contested may vote for the Plan unless authorized by the Court to do so after motion and court order entered prior to the Confirmation hearing unless the Debtor stipulates to allow a Creditor temporary voting privileges.

**4.03** **Class Acceptance Requirement.** A Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class that have voted on this Plan.

**4.04** **One Vote Per Holder.** If a holder of a Claim holds more than one Claim in any one class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting on this Plan.

**4.05** **Cramdown.** Notwithstanding the rejection or deemed rejection of this Plan by any class of Claims, the Debtor shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code.

## TREATMENT OF ADMINISTRATIVE EXPENSES
## AND CLASSES NOT IMPAIRED UNDER THE PLAN

**5.01** **Class 1: Administrative Expenses.** The allowed amount of Administrative Expenses shall be paid:

(A) On the later of: (1) the Effective Date; or (2) ten days after an Order approving the Administrative Expenses is entered if the Claim is one of a professional person employed under Sections 327 or 1103 of the Bankruptcy Code or otherwise employed by the Bankruptcy Court; or (3) for all other Administrative Expenses, twenty days after the Claim becomes an Allowed Claim; or,

(B) Through such other treatment as may be agreed in writing by such holder of an Administrative Expense or as expressly set forth herein; provided, however, an Allowed Administrative Expense representing a liability incurred in the ordinary course of business shall be paid by Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

**5.02    Class 2: Priority Claims.**  The Debtor will pay all Class 2 claims, to the extent any exist, in 5 years, in even annual cash payments, commencing one year after the Petition Date, a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim consistent with 11 U.S.C. §§ 1129 (a)(9)(B) and 1129(a)(9)(C).

### TREATMENT OF CLASSES IMPAIRED UNDER THE PLAN

**6.01    Class 3: Litigation Unsecured Claims.**  The Allowed amount of the Claims of GEM Holdco, LLC and CWT shall be treated the same as Class 4 Allowed Claims of Unsecured Trade Vendors and Class 5 Allowed Claims of General Unsecured Creditors as set forth in Section 6.03 set forth herein below.

**6.02    Class 4: Claims of Unsecured Trade Vendors.**  The Allowed amount of the Claims of Unsecured Trade Vendors shall be treated the same as Class 3 Litigation Unsecured Claims and Class 5 Allowed Claims of General Unsecured Creditors as set forth in Section 6.03 set forth herein below.

**6.03    Class 5: Claims of General Unsecured Creditors.**  The Allowed Claims of the General Unsecured Creditors, as well as the Allowed amounts of Classes 3 and 4, shall be treated as follows:

Allowed Unsecured Creditors (including any Allowed Claim in Classes 3, 4, and 5) shall be paid an aggregate sum of $3,390,934 in quarterly pro-rata payments as set forth below:

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Quarter 1 | 25,000 | 79,162 | 183,381 | 234,777 | 306,729 |
| Quarter 2 | 50,000 | 79,162 | 183,381 | 234,777 | 306,729 |
| Quarter 3 | 50,000 | 79,162 | 183,381 | 234,777 | 306,729 |
| Quarter 4 | 50,000 | 79,162 | 183,381 | 234,777 | 306,729 |
| Yearly Total | 175,000 | 316,649 | 733,523 | 939,106 | 1,226,918 |

**6.04**    **Class 6: Interests of Equity Security Holders.** The Allowed Equity Security Interests of the Equity Security Holders in the RDX Technologies Corporation, including but not exhausted by any stock in the Debtor, shall be cancelled in their entirety upon the Effective Date.

IMPLEMENTATION OF THE PLAN

**7.01**    **Procedure To Implement The Plan**. On the date of Plan Confirmation, or prior to where applicable, the following events shall occur:

The Debtor shall:

a.    Determine the amounts of all allowed Class claims.

b.    Execute any documents necessary to implement Plan.

c.    File with the Court post-confirmation quarterly reports, and provide a copy of the same to the United States Trustee, and pay any post-confirmation quarterly fees as required by the *United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases* until a final decree is obtained in this case.

d.    Appoint a Disbursing Agent

e.    If it has not already done so, the Debtor shall cause any Proprietary Technology and Intellectual Property still currently held by the Debtor's wholly owned subsidiary Danzik Hydrological Sciences, LLC ("DHS") to be assigned to the Debtor.

f.    The Debtor shall receive no later than the Effective Date a capital contribution from Induction Energy Corporation ("IEC") in the amount of $500,000.

g. The Debtor shall receive not later than the Effective Date a capital contribution from Environmental Technologies Corporation ("ET") in the amount of $150,000.

h. The Debtor shall upon the Effective Date issue 20,000,000 new shares in the Reorganized Debtor which shall be distributed as follows:

    i. 10,000,000 shares to IEC.

    ii. 3,000,000 shares to ET.

    iii. 7,000,000 shares held in treasury.

i. The Debtor shall use the contributed capital to restart its water treatment and ancillary business' and perform on initial Plan obligations.

**7.02** **<u>The Reorganized Debtor Shall Serve As The Disbursing Agent.</u>** The Debtor shall become the Disbursing Agent on the day after the Effective Date to serve as Disbursing Agent for all payments to be made to the Classes under the Plan.

a. **Duties of the Disbursing Agent**. The Disbursing Agent shall receive, disburse and account to the Court, the Creditors, Equity Security Holders and other parties in interest for the assets, and shall be responsible for reviewing and approving all claims (all disputes to be resolved by the Court), keep adequate records of all transactions, receipts and disbursements, communicating with, and advising all Creditors, the Debtor and other parties in interest as needed, and such other duties as may be consistent with the responsibilities of a Disbursing Agent.

The Disbursing Agent shall also have the right to object to the allowance of any Claim on behalf of the Debtor. These actions may necessitate use of legal services and incurring legal expenses.

The Disbursing Agent on behalf of the Reorganized Debtor shall file with the Court post-confirmation quarterly reports, and provide a copy of the same to the United States Trustee, and pay any post-confirmation quarterly fees as required by the *United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases* until a final decree is obtained in this case. The Disbursing Agent shall acknowledge and assume these duties, and all other obligations of Disbursing Agent set forth herein, by its execution of an acceptance on the notice of the appointment of the Disbursing Agent to be filed with Court pursuant to Section 7.02 of the Plan.

      b.    **Termination of Disbursing Agent's Duties**:  The final distribution of the remaining pre-petition assets of the Reorganized Debtor pursuant to the terms of the Plan set forth herein shall discharge the Disbursing Agent.

      c.    **Compensation of Disbursing Agent.** The Disbursing Agent shall not receive any compensation other than the reimbursement of any actual out of pocket costs incurred by the Disbursing Agent in performing the duties authorized by this Plan which may include legal fees and expenses.

**7.03**   **Effectuating Documents.**  On or before the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court such agreements, indentures, instruments and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**7.04**   **Property Vests In The Reorganized Debtor.**  All Property, assets and rights of the estate of the Debtor shall vest in the Reorganized Debtor, free and clear of all liens, Claims and encumbrances of any kind whatsoever unless expressly provided for under this Plan. The Reorganized Debtor shall be able to manage their affairs, subject only to the limitations set forth in this Plan, without the requirement of further orders from the Bankruptcy Court.

**7.05** **Minimum Distributions.** The distributions to holders of Claims pursuant to the Plan are minimum distributions only, and the Reorganized Debtor shall have the right and discretion, at all times, to make full or partial prepayments without penalty to holders of Claims.

**7.06** **Unclaimed Monies.** All distribution of money under the Plan which are returned by the Post Office undelivered or which cannot be delivered due to lack of a current address will be retained by the Disbursing Agent, in trust, in a federally insured bank for the distributee; after the expiration of six months from the date of the first attempted distribution, the unclaimed monies, stock, and all future distributions will be redistributed pro rata to the other distributees, free of any Claim by the distributee.

**7.07** **Void Nature Of Any Post-Petition Trustee's Sales Or Foreclosures.** Any trustee's sales or other forms of foreclosure of the Debtor's real property undertaken after the Petition Date in violation of the 11 U.S.C. § 362 are hereby deemed void. Any Creditor, Creditor's affiliate or agent, or other party, who purported to undertake such a trustee's sale or foreclosure of the Debtor's real property shall use best efforts to correct and document the void nature of their act(s) and document and correct any public record of such a void trustee's sale or foreclosure. The remedy for enforcing this provision expressly includes, but is not exhausted by, that of specific performance and injunction without the need for a bond by the Debtor.

**7.08** **Binding To Debtor And Creditors.** Upon the entry of the Confirmation Order, this Plan shall bind the Debtor now known as the Reorganized Debtor, Equity Security Holders of the Debtor, any entity acquiring or being distributed any property under this Plan, any Creditor, whether or not their Claims and interests are impaired under this Plan and whether or not they have accepted this Plan.

# CONDITIONS OF CONFIRMATION

**8.01**    **Conditions To Confirmation Of The Plan.** It shall be a condition precedent to the Confirmation of this Plan that the Final Order provide for:

        **(a)**    Confirmation of this Plan;

        **(b)**    To supplement the injunctive provisions of section 524 of the Bankruptcy Code, except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all persons or entities and governmental units shall be stayed, restrained and enjoined from taking any of the following actions on account of any such discharge Claims, debts or liabilities: (i) commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor, or its property; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting or recovering in any manner any judgment, award, decree or order against the Reorganized Debtor, or its property; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against the Reorganized Debtor, or any of its property, or any direct or indirect transferee of any property of, or any direct or indirect successor in interest to, or any property of such transferee or successor; (iv) setting-off, seeking reimbursement of, contribution from, subrogation against or otherwise recouping in any manner directly or indirectly, any amount owed to the Reorganized Debtor, or any direct or indirect transferee of any property of, or any successor in interest to the Reorganized Debtor, commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

        Pursuant to the Plan, none of the Debtor, the Plan Sponsors, Official Committees, or any of their respective present or former partners, members, officers, directors, employees, advisors, attorneys or agents (collective, the "Released Parties") shall have or incur any liability to any holder

of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns for any act or omission in connection with, relating to or arising out of the Chapter 11 case, any settlement related to the Chapter 11 case, the negotiation and execution of a proposed Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan, issuance and distribution of any securities issued or to be issued pursuant to the Plan, or the property to be distributed under the Plan, except only to the extent that liability is based on willful misconduct. The Released Parties shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan, or in the context of the Bankruptcy Case; and,

        **(c)** Acceptance or rejection of this Plan was solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and no Person conducting or participating in solicitation, including the Debtor, shall be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation government solicitation of acceptance or rejection of a plan of reorganization.

## GENERAL PROCEDURES FOR OBJECTING TO CLAIMS
## AND RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS

        **9.01** <u>**Claim Objection Deadline.**</u> Unless another date for any particular Claim or Claims is established by the Bankruptcy Court or this Plan, all objections to Claims shall be filed with the Clerk of the Bankruptcy Court and served on the holders of such Claims (unless earlier filed) by the later of ninety (90) days after the Effective Date or the date that is ninety (90) days after a particular proof of claim (or a request for payment in the case of Administrative Claim) has been filed. If an objection has not been filed to a Claim by the deadlines established herein, the Claim shall be treated as an Allowed Claim; provided, however, that no objection shall be required if a Claim was

not listed on the Schedules or was listed on the Schedules as disputed, contingent or unliquidated, or was not evidenced by a timely filed proof of Claim. No such unlisted, disputed, contingent, unliquidated or unfiled Claim shall be treated as an Allowed Claim, except pursuant to a Final Order so providing. The objection deadlines established herein shall not apply to Claims and causes of action that must be asserted through an adversary proceeding.

      **9.02**    <u>**Preservation Of Objections To Claims.**</u> Except as otherwise provided in this Plan or in the Confirmation Order or other Final Order, no compromise, waiver or release of Claims, demands or causes of action, that may be provided for in this Plan or in any Final Order of the Court shall, in any way, limit or impair the right of the Reorganized Debtor to prosecute objections to Claims, and the Reorganized Debtor hereby retain all objections to the allowability of a Claim and all defenses associated with such objections.

      **9.03**    <u>**No Distributions Pending Resolution Of Objections.**</u> Notwithstanding any other provision of this Plan, no distributions shall be made with respect to a contested Claim (or any contested portion of a Claim, if such Claim is not severable) by the Reorganized Debtor unless and until all objections to such contested Claim have been determined by Final Order.

      **9.04**    <u>**Interest On Contested Claims And Contingent Claims.**</u> No interest shall accrue on a contested Claim during the period from the Effective Date until the date on which the Claim is allowed, if ever, and no interest shall accrue on a contingent Claim during the period from the Effective Date until the date on which the Claim becomes fixed and absolute or is otherwise allowed, if ever; provided that a contested Claim or a contingent Claim that is specifically entitled to post-confirmation interest by the terms of this Plan, and that is ultimately allowed, shall accrue post-confirmation interest from the Effective Date.

**9.05    Treatment Of Contingent Claims.** Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed and absolute or is disallowed, such Claim shall be treated as a contested Claim for all purposes related to the distributions under this Plan; provided, however, that the distribution entitlements shall arise only from the date on which a contingent Claim becomes fixed and absolute or is otherwise allowed.

**9.06    Disallowance Of Post-Petition Additions.** The Reorganized Debtor shall not be required to make specific objection to proofs of Claim that allege a right to recover post-petition interest, penalties, fees, and other accruals with respect to pre-petition Claims (except Secured Claims entitled to such accruals pursuant to section 506(b) of the Bankruptcy Code), and any Claim amounts attributable to such post-petition interest, penalties, fees and other accruals shall be disallowed in full upon entry of the Confirmation Order.

**9.07    Settlement And Resolution Of Disputed and Undisputed Claims.** The Reorganized Debtor shall be authorized to settle or resolve, without Court approval, any disputed or undisputed Claims with a settlement payment amount that does not exceed five thousand dollars ($5,000).

**9.08    Preservation Of Debtor's Claims, Demands And Causes Of Action.** All claims, demands and causes of action held by, through or on behalf of the Debtor, against any other person or entity, are hereby preserved in full, unless otherwise provided by this Plan; and no provision of this Plan shall impair the rights of the Reorganized Debtor with respect to any of such claims, demands and causes of action to prosecute and defend against any such preserved claims, demands and causes of action.

# GENERAL PROVISIONS

**10.01** <u>**Post-Confirmation Operating Of The Automatic Stay.**</u> Any lawsuits pending in any court (other than the Bankruptcy Court) that seek to establish the Debtor's liability on pre-petition Claims and that are stayed pursuant to section 362 of the Bankruptcy Code, shall be dismissed as of the Effective Date unless the Reorganized Debtor elects to have its liability determined by such other courts. Any pending motions to lift or vacate the automatic stay shall be deemed denied as of the Effective Date and the stay shall remain in effect. Any such pre-petition Claims shall be determined as provided in this Plan.

**10.02** <u>**Prohibition against Discriminating Treatment against the Reorganized Debtor.**</u> No individual, entity or government may discriminate against the Reorganized Debtor solely because of the commencement, continuation or termination of this Chapter 11 proceeding, or because of any provision of this Plan, or the legal effect of this Plan, and the Confirmation Order shall constitute an express injunction against such discriminating treatment.

**10.03** <u>**Compliance With Tax Requirements.**</u> In connection with this Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities.

**10.04** <u>**Insurance.**</u> The Reorganized Debtor shall use its best efforts to maintain insurance on any non-exempt pre-petition property they retain pending completion of distributions to Creditors.

**10.05** <u>**Termination Of Adequate Protection Payments.**</u> Upon the entry of a Confirmation Order by the Court, any and all payments to Secured Creditors for adequate protection shall be terminated.

**10.06 No Additional Charges.** Except as expressly stated in this Plan, or as allowed by Court order, no interest, penalty, late charge or additional charges (such as attorneys' fees) shall be allowed on any Claim subsequent to the Filing Date.

**10.07 Deficiency Claims.** Unsecured Creditors whose Claims arise out of a deficiency resulting from the abandonment of Collateral to a previously Secured Creditor or resulting from orders granting relief from the provisions of section 362 of the Bankruptcy Code, must file their Claims within thirty (30) days after Confirmation of this Plan unless the Court enters an Order making an 11 U.S.C. § 506 determination of secured status as to the subject Unsecured Creditor prior to Conformation in which case said Unsecured Creditor must filed its Claim within thirty (30) days after the entry of said Order.

**10.08 Barring Of Claims.** The entry of the Confirmation Order shall permanently bar the filing and asserting of any Claims against the Debtor which arose or relate to the period of time prior to the Confirmation Date, which were listed by the Debtor in its Schedules and Statement Of Financial Affairs (as amended) filed with the Court or were not evidenced by timely and proper proofs of Claim filed with the Court.

**10.09 Amount Of Claims.** All references to Claims and amount of the Claims refer to the amount of the Claims as allowed by the Court. The Debtor reserves the right, both before and within sixty days (60) after the Effective Date, to object to Claims so as to have the Court determine the amount allowed to be paid under this Plan.

**10.10 Remedies To Cure Defects.** After Confirmation, the Reorganized Debtor may, with the approval of the Court, and so long as it does not materially and/or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or

in the Confirmation of this Plan, in such a manner as may be necessary to carry out the purposes and the intent of this Plan.

**10.11 <u>Retention Of Jurisdiction.</u>** After the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 cases for the following purpose:

**(a)** To determine any and all objections to the allowance of Claims;

**(b)** To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or this Plan;

**(c)** To determine any applications for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

**(d)** To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date;

**(e)** To consider any modifications of this Plan, remedy and defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

**(f)** To determine any and all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any person's or entity's obligations thereunder;

**(g)** To determine all controversies, suits and disputes arising as a result of a demand by any utility for a deposit or other form of security as a condition to providing post-confirmation utility services to the Debtor;

**(h)** To determine all controversies, suits and disputes of this Plan as a result of discriminatory treatment of the Debtor;

**(i)** To hear and determine any Claim or cause of action by or against the Debtor, and to consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtor;

**(j)** To issue such orders in aid of execution of this Plan, as are authorized by section 1142 of the Bankruptcy Code; and

**(k)** To determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with this Plan or the Confirmation Order.

**10.12** <u>**Modification Of Plan.**</u> Modifications of this Plan may be proposed in writing by the Debtor at any time before Confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after Confirmation and before its substantial consummation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and hearing, confirms this Plan, as modified, under § 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**10.13   Severability.** Wherever possible, each provision of this Plan shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Plan. Furthermore, if the Bankruptcy Court will not confirm this Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, the Debtor may seek permission of the Bankruptcy Court to amend this Plan by deleting the offending provision.

**10.14   Revocation Of Plan.** The Debtor reserves the right to revoke and/or withdraw this Plan prior to entry of the Confirmation Order.  If the Debtor revokes and/or withdraws this Plan, or if Confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or entity or to prejudice in any manner the rights of the Debtor or any person or entity in any further proceeding involving the Debtor.

**DISCHARGE OF DEBTOR**

**11.01   Discharge Of The Debtor.** Except as otherwise provided in this Plan or in the Confirmation Order, the rights afforded under this Plan and the treatment of Claims under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims including any interest or Claims from the petition date. Confirmation of this Plan shall discharge the Debtor from all Claims or other debts, liabilities or obligations of any kind or nature, that arose, in whole or part, before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of Claim based on such debt is timely filed or deemed filed pursuant to section 501 of the Bankruptcy Code, a Claim based on such debt is

Case 2:17-bk-14387-PS    Doc 49    Filed 04/04/18    Entered 04/04/18 20:49:54    Desc
Main Document        Page 45 of 50

allowed pursuant to section 502 of the Bankruptcy Code, or the holder of a Claim based on such debt has accepted this Plan.

**11.02  Effect Of Discharge On Other Entities.** Pursuant to section 524(e) of the Bankruptcy Code, except as otherwise provided in this Plan, the discharge of a debt of the Debtor, pursuant to this Plan, shall not affect the liability of any other entity on, or the Property of any other entity for, such debt.

**11.03  Modification Of Plan Due To Default.** If any Creditor holding an Allowed Claim seeks such an Order, the Debtor may seek modification of the Plan prior to entry of the Order based upon good cause for the default and reasonableness of the modification.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**12.01  Description of Executory Contracts.** The Debtor has no executory contracts in the capacity as a lessor or lessee.

**12.02  Rejected If Not Assumed.** All contracts and leases of the Debtor that constitute executory contracts or unexpired leases as of the date of filing the Chapter 11 petition for relief shall be rejected as of the Effective Date, except for the leases set forth or described in Section 12.01.

**12.03  Disputes As To Executory/Unexpired Status.** Notwithstanding Section 12.02 above, if on the Effective Date there is a pending dispute as to whether a contract is executory or a lease is unexpired, the Debtor's right to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

**12.04  Expired Contracts Or Leases.** Any contract or lease that expired pursuant to its terms prior to the Effective Date, and that has not been assumed or rejected by Final Order prior to the Effective Date, is hereby specifically rejected.

1         **12.05**   <u>**Bar To Rejection Damages.**</u>  If the rejection or an executory contract or unexpired

2 lease results in damages to the other party or parties to such contract or lease, a Claim for such

3 damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not

4 be enforceable unless a proof of Claim is filed with the Bankruptcy Court and served upon the

5 Debtor as follows: (a) if the Claim arises from the rejection of an executory contract or unexpired

6 lease by operation of any provision of this Plan, thirty (30) days after the date of service of notice of

7 the Effective Date; (b) if the Claim arises from the rejection of an executory contract or unexpired

8 lease pursuant to a Final Order of the Bankruptcy Court (other than the Confirmation Order)

9 authorizing rejection of such contract or lease, thirty (30) days after service of notice of the entry of

10 such Final Order; or (c) if the Claim arises from the rejection of an executory contract or unexpired

11 lease that is rejected after withdrawal of the assumption thereof, thirty (30) days after service of

12 notice of the assumption withdrawal. The foregoing applies only to Claims arising from the

13 rejection of an executory contract or unexpired lease; any other Claims held by a party to a rejected

14 contract or lease shall have been evidenced by a proof of Claim filed by earlier applicable bar dates

15 or shall be barred and unenforceable.

16         **12.06**   <u>**Cure Of Defaults Upon Assumption.**</u>  Upon the assumption of any executory

17 contract or unexpired lease (including an executory contract or unexpired lease deemed to be such

18 by assumption herein) including, without limitation, defaults by the Debtor specified in section

19 365(b)(10) of the Bankruptcy Code and any defaults by the Debtor specified in section 365(b)(2) of

20 the Bankruptcy Code, shall be deemed cured except to the extent written demand for the cure of or

21 demonstration of ability to cure any default has been filed with the Bankruptcy Court and served

22 upon the Debtor by the non-debtor party to such executory contract or unexpired lease within thirty

23 (30) days after the date of service of notice of the Effective Date. In the absence of a timely demand

Case 2:17-bk-14387-PS    Doc 49    Filed 04/04/18    Entered 04/04/18 20:49:54    Desc
Main Document     Page 47 of 50

in accordance with the foregoing, the Debtor's obligation to cure or demonstrate the ability to cure shall be deemed waived, released and discharged. If any non-debtor party to such executory contract or unexpired lease timely serves and files such written demand, and the Debtor files an objection in writing to such demand within thirty (30) days thereafter, the Bankruptcy Court shall, by the issuance of a Final Order, determine the amount actually due and owing in respect of such demand or shall approve the settlement of such demand. The Debtor shall have thirty (30) days thereafter in which to effect such cure or withdraw <u>ab</u> <u>initio</u> their assumption of such executory contract or unexpired lease whereupon such executory contract or unexpired lease shall be deemed to have been rejected as of the date of the Chapter 11 petition for relief.

**12.07** <u>**Treatment of Claims Arising From Assumption Or Rejection.**</u> All Allowed Claims arising from the assumption of an executory contract or unexpired lease shall be treated as a General Unsecured Claim unless otherwise ordered by Final Order of the Bankruptcy Court. No such Claims are anticipated in this case. In the event no General Unsecured Class exists, but one is needed, the Debtor will create one with a modification.

**TAX CONSEQUENCES**

The Proponent has not obtained a tax opinion at this time and therefore such party expresses no opinion as to the tax consequences of confirmation or implementation of the Plan to the holder of any claim or interest.

BECAUSE NO PROPONENT OF THE PLAN EXPRESSES ANY OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN, IN NO EVENT WILL THE DEBTOR OR ITS PRINCIPALS OR ITS PROFESSIONAL ADVISORS, BE LIABLE IF, FOR ANY REASON, THE TAX CONSEQUENCES OF THE PLAN ARE NOT AS ANTICIPATED BY CREDITORS AND EQUITY INTEREST HOLDERS. THE DEBTOR'S CREDITORS AND

EQUITY INTEREST HOLDERS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THE PLAN.

<u>**PROPONENT'S RECOMMENDATION**</u>

The Debtor recommends that the creditors vote for the plan because they will receive a superior return to what they would receive in a liquidation and positive votes will enable the Debtor to obtain the confirmation of the plan as soon as possible which will result in the creditor's receiving a distribution sooner. For these and the other reasons noted herein, the Debtor urges you to vote to accept the Plan.

DATED this 4th day of April, 2018

LAW OFFICE OF MARK J. GIUNTA

By ___/s/ Mark J. Giunta SBN 015079_____
    Mark J. Giunta, Esq.
    Liz Nguyen, Esq.
    *Attorneys for Debtor*

Approved by Debtor:

/s/_____          _____
Anthony Ker

A Copy of the foregoing was electronically filed
This 4th day of April, 2018 with the U.S. Bankruptcy Court.

COPY of the foregoing mailed (and/or served via
fax* or e-mail** if so marked) 4th day of April, 2018 to:

J. Henk Taylor *htaylor@rrulaw.com          Christopher J. Pattock
RYAN RAPP & UNDERWOOD, P.L.C.          *christopher.j.pattock@usdoj.gov
3200 North Central Avenue, Suite 2250          Office of the United States Trustee
Phoenix, Arizona 85012                         230 North First Avenue, Suite 204
*Attorney for CWT Canada II LP*               Phoenix, Arizona 85003

Joshua Wurtzel *jwurtzel@schlamstone.com      United States Trustee
Jeffrey M. Eilender *jeilender@schlamstone.com   230 North First Avenue, Suite 204
Bradley J. Nash *bnash@shalamstone.com        Phoenix, AZ  85003-1706
Schlam Stone and Dolan LLP
26 Broadway
New York, NY 10004
*Attorneys for CWT Canada II LP*


/s/ Logan Schutz